UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | CR No. 05-0123T |
| | ) | |
| MANUEL CORADIN | ) | |

SUPPLEMENT TO DEFENDANT'S OBJECTION TO PRESENTENCE REPORT

Now comes Manuel Coradin, the Defendant in the above captioned matter, and supplements his objection to the advisory guideline calculation in the presentence report ("PSR"). As the report now stands, the probation department has calculated Mr. Coradin's advisory guideline range at 168 to 210 months (OL 31 in CHC V). Mr. Coradin's calculations arrive at an advisory range of 140 to 175 months (OL 29 in CHC V). Based on the terms of the plea agreement, the resolution of this objection basically decides whether the parties' sentencing recommendation will be 140 or 168 months incarceration.[1] In support of the objection Mr. Coradin briefly presents the following four points.

I. Conversion and *United States v. Gerante*

Both the probation department and the government rely on *United States v. Gerante*, 891 F.2d 364 (1CA 1989), for the basis of converting the seized monies here into a controlled substances equivalent for the purposes of sentencing. First, however, the Court must decide if the advisory guideline range reflects the true scale of Mr. Coradin's conduct before the conversion of any seized monies. U.S.S.G. § 2D1.1, cmt. n. 12 (2007); *see also Gerante*, 891 F.2d at 369. This is the Court's determination, not that of the probation department. Certainly the government may argue for the conversion, but the conversion by the probation department presumes the Court's decision. Here the Court must decide if 140 months sufficiently reflects the scale of Mr. Coradin's criminal conduct before engaging in the process of converting the cash seized into an estimated phantom drug quantity

[1] Mr. Coradin and the government agreed to a sentencing recommendation at the low end of the calculated advisory guideline range.

in order to more sufficiently reflect his culpability.

II. Polysubstance Conversions for Sentencing in Crack Cocaine Cases[2]

When determining the offense level in drug trafficking cases the advisory guidelines assign the level based on the weight of the controlled substance involved in the case. U.S.S.G. § 2D1.1(c) (Drug Quantity Table). When more than one substance is involved, the guidelines convert the amount of the various substances into an equivalent of marijuana and then add the scaled "marijuana" weights to arrive at a total drug weight for sentencing. U.S.S.G. § 2D1.1, cmt. n. 10 (D) & (E). The United States Sentencing Commission amended the guidelines for crack cocaine offenses effective November 1, 2007, which essentially lowered those ranges by two offense levels. Unfortunately, that change also resulted in upsetting the delicately balanced conversion ratios in polysubstance cases when one substance is crack cocaine. Now the conversion rate for crack cocaine to marijuana varies greatly depending on the offense level. *See* U.S.S.G. § 2D1.1, cmt. n. 10 (D)(i)(II) (ranging from 16 Kg of marijuana equaling 1 gram of crack cocaine to 5 Kg equaling 1 gram). The new conversion table creates an unfair and anomalous sentencing atmosphere in polysubstance crack cases which is basically akin to an arbitrary and capricious sentencing scheme. *See United States v. Horta*, ___ F. Supp. 2d ___, 2008 U.S. Dist LEXIS 13043, *5-8 (D. Me. 2008), *and United States v. Watkins*, ___ F. Supp. 2d ___, 2008 U.S. Dist LEXIS 2666, *7-16 (D. Tenn. 2008) (both cases holding that the altered conversion rates result in anomalous and disproportionate sentences in violation of 18 U.S.C. § 3553(a)(6)). This anomaly directly applies to Mr. Coradin.

Mr. Coradin possessed 211 grams of crack cocaine placing him into the offense level 32; a range of 150 to 500 grams of crack cocaine. U.S.S.G. § 2D1.1(c). Mr. Coradin also possessed about 50 grams of powder cocaine and thereby initiating the conversion process under U.S.S.G. § 2D1.1, cmt. n. 10. Given these facts and this conversion regime, Mr. Coradin vaults to offense level 34 when he possesses merely 448 grams of crack cocaine, instead of 500 grams. This discrepancy is precisely the situation that the *Horta* and *Watkins* courts ruled improper. Assuming the Court converts the seized cash into an estimated drug weight, Mr. Coradin will fall into the range between

---

[2] Exhibits A & B present further explanation of the conversion discrepancy and examples of the disparate effect.

448 and 500 of crack cocaine grams and therefore be unfairly prejudiced by this conversion.

III. Conversion of Cash into Controlled Substances

The guidelines allow the Court to approximate a quantity of controlled substances based on monies seized in an effort to have the calculated guideline range accurately reflect the scale of a defendant's culpability. U.S.S.G. § 2D1.1, cmt. n. 12. The Court can convert the amount of cash into a drug amount based on evidence of the general price of the controlled substance. *Id*. Mr. Coradin has suggested, and now further asserts, that the cash seized from him represents sales which were generally $100 per gram of cocaine. The probation department has used a figure of $75 per gram of cocaine, powder or crack, for its conversion based on information from the Drug Enforcement Agency. The government has put forth its estimate of $60 to $70 per gram, retail (as opposed to a wholesale estimate of $25-$30), per its expert Detective Colunduano. If necessary, the Court will need to determine the appropriate rate of conversion at the time of sentencing. The Defense, however, requests that the supporting information for probation's estimate and the government's position be provided prior to the hearing to ensure an efficient process.

IV. Assignment of Proportion

The probation department, as stated above, made its own determination that the seized monies here ought to be converted into a drug weight for sentencing. The probation department also made the determination that all of the seized cash represented proceeds of crack cocaine sales. *See* PSR ¶ 15 ("Since the amount of cocaine base found in this case far outweighs the cocaine powder seized, the Probation Department converted the cash to cocaine base."). The problem with this decision is twofold. First, as with the decision to convert, the proportionate conversion of the cash to drug weight is the Court's decision. Second, regardless of the relative weight of the actual drugs to each other, the government charged Mr. Coradin with trafficking both crack and powder and he pled guilty to both. If necessary to convert the cash in this case, there is no basis to convert the cash into a drug weight except proportionally.

Here, the crack cocaine makes up approximately 80.8% of the total cocaine possessed;

conversely the powder is 19.2%. Splitting the cash proportionally assigns $20,412 to crack and $4,850 to powder. Applying probation's figures ($75 per gram) to the cash, it converts into 272 grams of crack cocaine and 65 grams of powder cocaine. In sum total Mr. Coradin would be responsible for approximately 483 grams of crack cocaine and 115 grams of cocaine powder. If the Court deems the addition of drug proceeds necessary to determine the appropriate guideline offense level, assigning the cash proportionally among the possessed substances presents the most fair application of this part of the sentencing determination.

## V. Conclusion

The Court should sustain this objection. The calculations in the presentence report are premature, arbitrary, and not based on fact proved to the Court. If the Court determines that it is necessary to include the seized cash in Mr. Coradin's sentencing guidelines calculations, then the Court should assign the impact of the cash proportionately to crack and powder cocaine, and hear evidence and argument as to the representative drug weight for the cash. The Court should also weigh the relative seriousness between the two types of cocaine to determine the proper offense level rather than relying on the flawed conversion process.[3] The result is an offense level of 32 and, ultimately with acceptance of responsibility, an advisory guideline range of 140 to 168 months.

---

[3] Prior to November 1, 2007, the sentencing ratio between powder and cocaine was 100:1. That is 100 grams of cocaine powder was equal to 1 gram of crack cocaine for sentencing purposes. Now, in Mr. Coradin's particular case, at offense level 32, 5000 grams of powder equals 150 grams of crack; more simply a 33:1 ratio. Using that ratio and the proportional assignment of cash discussed above, the estimated 115 grams of cocaine powder converts into less than 4 grams of crack. The result is an amount of relative crack cocaine liability which falls into offense level 32, not 34.

Respectfully submitted
Manuel Coradin
By his attorney,

/s/ Kevin J. Fitzgerald, 5775
Assistant Federal Defender
10 Weybosset St., Ste. 300
Providence, RI 02903
(401) 528-4281
FAX 528-4285
kevin_fitzgerald@fd.org

CERTIFICATION

I hereby certify that a copy of this notice was delivered by electronic notification to Stephen Dambruch, Assistant United States Attorney, and Heather McLoughlin, United States Probation Officer, on March 4, 2008.

/s/ Kevin J. Fitzgerald

# EXHIBIT A

## I. Drug Ratios Pre-Amendment

Prior to the crack cocaine guideline amendment effective on November 1, 2007, the relative ratio among crack cocaine, powder cocaine and marijuana was consistent throughout the Drug Table (U.S.S.G. § 2D1.1(c) (2006)):

| | | |
|---|---|---|
| 1 g crack cocaine | = | 100 g cocaine powder |
| 1 g cocaine powder | = | .2 Kg marijuana |
| 1 g crack cocaine | = | 20 Kg marijuana |

## II. Drug Ratios Post-Amendment

The relative ratio among these three drugs is not consistent through the guidelines. Crack cocaine remains the highest "value" for sentencing purposes, but the conversion rate changes depending on the individual's beginning offense level based on the amount of crack cocaine present. For example:

| | | | |
|---|---|---|---|
| OL - 30 | 1 g crack cocaine | = | 70 g cocaine powder |
| | 1 g cocaine powder | = | .2 Kg marijuana |
| | 1 g crack cocaine | = | 14 Kg marijuana |
| OL - 32 | 1 g crack cocaine | = | 33 g cocaine powder |
| | 1 g cocaine powder | = | .2 Kg marijuana |
| | 1 g crack cocaine | = | 6.7 Kg marijuana |
| OL - 34 | 1 g crack cocaine | = | 30 g cocaine powder |
| | 1 g cocaine powder | = | .2 Kg marijuana |
| | 1 g crack cocaine | = | 6 Kg marijuana |

U.S.S.G. § 2D1.1(c) (2007).

EXHIBIT B

Effect of Inconsistent Conversion Rates in Poly-substance Crack Cases[4]

Example 1

- **Δ A possesses 75 g crack cocaine and 1 g cocaine powder.**
  - In this instance the crack equals 1050 Kg marijuana based on the conversion rate. Although the crack cocaine would be an offense level 30 on its own, it becomes an **offense level 32** before considering the negligible conversion value of the cocaine powder.

Compared with:

- **Δ B possesses 149 g crack cocaine only.**
  - Despite the fact that Δ B has twice as much crack cocaine in his possession, his **offense level is 30**.

Example 2

- **Δ X possesses 75 g crack cocaine and 1 g marijuana.**
  - The crack cocaine converts to 1050 Kg marijuana; an **offense level of 32**. The marijuana does not further affect the calculation.

Compared with:

- **Δ Y possesses 157 g crack cocaine and 1 g marijuana.**
  - The crack cocaine converts to 1050 Kg marijuana just like Δ X. Δ Y's **offense level is a 32**.

[4] U.S.S.G. § 2D1.1, cmt. n. 10 (D)(i)(II) (2007).